And we'll move to our second case this morning, City of Hammond versus the Lake County Board of Elections. Mr. Dick, good morning. Good morning, Your Honors. This court should reverse the district court's grant of summary judgment to the state for two reasons. First, the district court was correct that under the Bronovich factors, Indiana's differential scheme for voting for state trial court judges violates the Voting Rights Act. Mr. Dick, why should we, why would the Bronovich factors be applicable in this case when the facts are so different, right? So in Bronovich, they're dealing with a time, place, manner restriction. And in fact, the Supreme Court in Bronovich said that the test needs to be tailored to the particular circumstances of the case. And here we have something that's very different. And so why do you think we should import wholesale the Bronovich factors into this case? Thank you. I believe this is very much a manner of voting where in certain circuits, the judge, when their term comes to an end, their name is placed on the ballot with the question of yes or no. In the other circuits, it's an open election. And so I believe the Bronovich factors are very relevant to this. What is the size of the burden? What disparities does it create? Was this system common in 1982? What is the state's entire system of voting? And then what are the state's interests? I think those are very relevant factors. I agree, though, that this is different than what was going on there, but I think those factors are very relevant. And the state before the district court did not say these aren't applicable or, you know, you shouldn't apply these. And also it's a totality of the circumstances in Bronovich. And they say any circumstance. So if the state believed – Well, that's what the statute says itself. So we have to look at the totality of the circumstances.  Correct. And in Bronovich, that was where they started, and they said it is any circumstance. So if the state believed there were other circumstances in a situation like this that applied, then certainly in a totality of the circumstances test, any circumstance can be considered. I believe, though, that these are very good guideposts to deciding whether this system violates the Voting Rights Act. Well, I want to take that question a little bit further here. This clearly isn't a challenge to a voter rule that governs how elections are conducted, like ballot drop boxes and early voting requirements and mail-in voting requirements and so forth. So it's not a time, place, and matter challenge. And even the court in Bronovich did not – made it very clear to say we're not adopting any kind of a formal test for evaluating even time, place, and matter challenges. We're just telling you what factors are important to our decision in this particular case. It's not a framework. It's not a test. It's not even a multi-factor test that applies in every single case of that sort. This is not even a case of that sort, because you're challenging the Missouri Plan, as adopted in Indiana for three counties, but New York County in particular, Lake County in particular, for these superior court judges. So you're challenging not the time of the election, the place of the election, or the manner of the election, the manner of voting. You're challenging the system of appointment plus retention vote, retention election. So I don't see how Bronovich applies at all. And, Your Honor, on that – Neither does the vote dilution case law, Gingles, et cetera, because it's not that kind of a challenge either. First, Your Honor, I would say this court in Bradley v. Work expressly held that the Voting Rights Act applies to the retention votes actually in Lake County. So I would say this court's precedent provides that the Voting Rights Act applies to retention votes. Well, let's talk about that case. The ultimate holding in Bradley was that the challenge was moot because the Missouri Plan had been modified for Lake County, and the plan that was challenged was no longer in existence. And so the challenge was moot. There was not a challenge to the new plan that had any development in the record, and so the case was moot. And what the court said about the applicability of Section 2 to retention elections for superior court judges in Indiana could fairly be viewed as an advisory opinion and not a holding, even though it was dressed up in the language of a holding. Yes, Your Honor, but I believe that this court should follow that because this is most certainly about voting. In three judicial circuits, when a judge's term comes up, that judge's name is placed on the ballot, and voters vote on whether to retain that judge. And so that act of voting is what brings this within the VRA, and this court's statement or holding. Well, the act of voting in a retention election may be covered by Section 2 of the Voting Rights Act to the extent that the state or the local government were to implement some kind of voting restriction or rule that would have a discriminatory effect, a poll tax, unheard of, some sort of a special requirement about locations of the precincts, where to vote, what kinds of registration requirements must be complied with, et cetera. But not a fundamental challenge to the policy decision made by the state of Indiana that in these three counties, Superior Court judges should be appointed and subject only to a ballot box retention up or down vote. And the appointment process of the Missouri plan can't be decoupled from this system because it's a holistic system of choosing judges of this court, the Superior Court. Your Honor, and I would say it absolutely can be decoupled and has been decoupled in Indiana, and Allen County's the perfect example of that, where you have the governor appoints, to start out with, the governor appoints judges to fill vacancies in every court across the entire state of Indiana. That's not true. The governor fills midterm vacancies. Yes, Your Honor. That's different. So the governor's not the one who selects judges in those categories of judges that are elected, right? Circuit Court judges, Superior Court judges. Those are elected judges, and if a judge chooses not to run for re-election, it's an open seat election. There is no gubernatorial appointment. The governor's appointment authority is limited to midterm vacancies. So it's just incorrect to say that the governor chooses all Superior Court judges and the governor chooses all Circuit Court judges. That's not true. And actually, Allen County, I believe, exactly encapsulates what Your Honor has just stated. I agree. It fills vacancies that occur, and Allen County has a JNC that constrains the governor's authority, and then when those governors' terms come up, rather than go to a retention vote, those judges can have an open election. Another judge can throw their hat in, and I absolutely believe the language of the VRA is broad enough, and this court's statement or holding in Bradley to bring retention votes in within the VRA's coverage, and therefore it is an extreme burden. But as a systemic challenge to the use of gubernatorial appointment plus retention election, or as a challenge to some other kind of time, place, and manner voting rule that may apply to retention elections? I believe the VRA absolutely reaches if a state only gives a lesser or abridged voting right, and that's what I would say we have, an abridged voting right. No, it's a system of choosing judges. It's not an abridged voting right. It's a system of choosing judges that consists of appointment rather than election with a retention feature that is at the ballot box. Mr. Dick, perhaps, jumping off from where Chief Judge Sykes, from her, I thought, if in Lake County you had the system of Allen County, would you be here today? No, I believe if the state had implemented open elections in Lake County where you have a JNC that appoints the judge, but then you have elections, in that case we wouldn't have a burdened voting right. In that case, the racial disparities that are undisputed would not be present. This has only been implemented in the three most diverse counties in the state, and so if that's the system that Indiana went to, I do not believe that that would violate the VRA, and I think that the VRA- What if they took away the retention vote? What if everything stayed the same except the retention vote, and when the terms were up from the appointed judges in the counties where you're challenging it, the governor just appointed somebody? If you go to the chism in the U.S. Supreme Court discussed when they were challenging Louisiana's system that you could go to a judiciary of appointments, so yes, if they went to the judiciary- Where it's different throughout the state. I think if you only did that in high minority areas, so for example, let's say Louisiana and chism had said, okay, Orleans Parish, you've got a justice, but your justice is appointed. Every other justice in the state is going to be elected by the majority white parishes. I would say that absolutely violates- You mean, are you referring to justices of the Supreme Court? Yeah. Or are you referring to judges within- No, justices of Louisiana Supreme Court. In chism- Is that a trial court? No, it's the state Supreme Court. Okay, so you're talking about the state. You're talking about a Supreme Court, which is a single judicial entity. You're not talking about trial judges. And I would say that's one fundamental dispute here is that these are state courts. They apply state law. It's not- Voters can go in before any court of the state. I had a case last week with Lake County that started in Lake County, went down with the venue rules to Hamilton County, and so you can be pulled into any state court in this state- It seems like what you really don't like here is the fact that they're appointed in these three counties and elected throughout the rest of the state. I know you have focused and said, oh, you're just focusing on the retention vote, and that's what makes it fall within, but it seems like your real argument is more of a backdoor, that you don't like the appointment in the first place. No, Your Honor. On our Voting Rights Act claim, it's absolutely retention vote. Just like Allen County, the same system of appointment could stay in place, and if the voters in Lake County could then have an open election for the judge, the appointed judge can be in the race, just like Allen County. We would absolutely- That would not, in our view, be a problem, and if they implement that in the three counties, circuits where there's currently only a retention vote, our Voting Rights Act claim goes away. We haven't challenged the appellate courts because everyone is treated equally, and that's the one case that people have cited a lot and the district court held was controlling was Quinn, and there the court said, well, everyone is treated equally, and I would say that is absolutely not the case for the state of Indiana. Each voter are not treated equal. All voters do not get- Everyone within the relevant electorate is treated equally in the language of Section 2B. And I would say Brnovich on that factor is very clear that you need to look to the size of disparities and a rules impact. Brnovich doesn't apply here. That's a list of factors that was important to the time, place, and manner restriction that was at issue in that case. And, Your Honor, I would- And Brnovich made very clear that what is important is the language of the statute. Yes, Your Honor, and on that front- And the statute focuses attention on the relevant electorate, whether the election within the relevant electorate is open, equally open to all, and it is in Lake County equally open to all. Everybody can vote in the retention election. Yes, Your Honor, but in the words of the VRA, this is an abridged right. The vote is only on yes or no. It's not abridged within the relevant electorate. And I guess that would be, I believe, the district court believed that the relevant electorate for a state court judge is the state as a whole. And we also think it's highly relevant that the state has said that it implemented this system because of the diversity in Lake County. I think that strengthens that what is going on here is a violation. And I see I've got two minutes. Mr. Dick, if I could ask you a question. So, we're talking about judicial circuits, right? And judicial circuits don't have to be counties. Correct, Your Honor. Are there any judicial circuits in Indiana that are comprised of more than one county? Yes, Your Honor, there are. And I think this... And so, to say that these are county officials is not really quite the right terminology, right? And the Indiana Supreme Court has been very clear. These are state officials, state positions, state trial courts, and that's why we believe, and I believe, that the relevant electorate for determining whether voting on judges is equally open, and we're looking just at the VRA's language. Is it equally open? You've got to look at the state when it's a state court position, and this is a state trial court, and I litigate in state trial courts all the time. It is no different when I'm in Lake County, Hamilton County, Marion County. The courts are the exact same, and that's why I believe it's not consistent with the Voting Rights Act to say, in high minority areas, you get a retention vote. When I go to Hamilton County, and there's a defendant there, they get to vote for their judge. They may have donated money for the judge. This system is not equally open, and even under the plain language of the Voting Rights Act, as actually the district court said, the state, by saying that this has been done because Lake County, that voting is not equally open on account of race, and the judge looked to the plain language of the statute, and I think it's the exact same result, whether it's the Bronovich factors, or under the plain language of the VRA, that this system is not consistent with the VRA. Thank you. Thank you. Ms. Doering? Thank you, Your Honor. May it please the court. The appointment of Lake County Superior Court judges does not violate Section 2 of the Voting Rights Act. Section 2 requires that a given election be equally open to all members of the electorate. It does not require any state or political subdivision to elect rather than appoint particular officials, and this court has held as much in Quinby, Illinois. The issue, though, here is that in some counties, they are, and in some counties, they're not, right? And so the, I mean, as I understand it, before 1973, the voters in Lake County had open elections like everyone else in the state. That's correct. And in 1973, for reasons I will talk about, I'm sure, the legislature decided, you know what, we're going to change that vote. So we're going to leave everyone else, other than the two other counties, you know, we're going to leave everyone else vote the same, but we're going to take away the right to vote in an open election for judges in Lake County, and we're going to implement this, the Missouri system, only for Lake County, in 1973 at least, right? Isn't that different from what Chisholm and those other cases were talking about? In those cases, they're talking about, you know, either state, they're talking about statewide policies, right, not policies that tend to treat certain voters in certain parts of the state more favorably than other voters in other parts of the state. So, Your Honor, Section 2, under Chisholm, Section 2 does not require all offices in a state to be either elected or appointed. The limited holding of Chisholm was that Section 2 applied to judicial elections, because there was a question before then about whether Section 2 only applied to legislative representatives and not to judges. So it preserved the right of states to choose whether to elect judges. Nothing in Chisholm, there's no indication there that the... So what if, just hypothetically, what if Indiana legislature decided that for Lake County, Marion County, and St. Joe's County, the representatives of the Indian legislatures would be appointed by the governor and be subject to a retention vote? Would that violate Section 2? So that's still, as we're contending with this, that's still a difference. It's a different choice for different electorates, because the representatives and senators are elected by the voters in particular districts, and because... And so that would be fine, in your view? It would not be something that Section 2 has anything to say about. All right, so, well, that seems really odd to me, that representatives from a particular county or a particular district, you know, the governor can say, well, in these districts, I'm going to appoint them, and then they'll be subject to retention. But in the other districts, it can be an open election. That seems particularly discriminatory. Nothing in Section 2 specifically requires that a state decide to hold an election in any instance or not. For any office? For any public office. So when the state decides on rules for elections for a multi-member body like the state legislature, in Judge Lee's hypothetical, the state doesn't need to follow the non-discrimination norm in Section 2? I would think your answer would be that it's different for a multi-member statewide body than it is for a local court. In the sense that here, we're talking about one particular electorate and the official, the Lake County Superior Court is a different judicial district than the superior courts in other states. Since we don't have a multi-member body here, we just have a judiciary that sits in this particular county and hears cases that are venued properly in this particular county. And the fact that they're denominated as state judges as opposed to county judges only means that the state pays their salary and that they have general jurisdiction. So yes, that's what the Indiana Supreme Court said, the decision that both the district court and the appellants have discussed. The holding there was specific to compensation and the OIG's duty to defend of court officers associated with particular counties. The reason here that the question of whether the judge is a state entity for that purpose, the compensation purpose, or even the constitutional purpose in that superior courts are established in the Indiana Constitution. It's not relevant to the Section 2 and 3 because it doesn't have any bearing on what is the electorate, which is the question that this court has to consider. How do we address the totality of the circumstances then? Why wouldn't the system for the full state be relevant to the totality of the circumstances analysis? So where we disagree with the appellants here on the applicability specifically of Brnovich and that idea of the entire system of voting that Brnovich talks about, the system of voting that Brnovich is referring to is not related to the electorate or whether a given election takes place in a particular local area, but rather the openness of that election, what methods of voting are available. Putting Brnovich aside though, the statute itself has totality of the circumstances language in it. Correct. Are you saying that Section B doesn't apply at all so we don't look at totality of the circumstances? So the first point would be that because Lake County judges are appointed in the first instance and then later retained in retention elections, Section 2 does not have anything to say about appointed positions. This court said this in Bradley. This court said this in Quinn. So we would not need to consider... So turn to the retention portion of that because I think that's what their argument is. Yes. So what the plaintiffs are asking is that they are upset that the retention elections are a different question or a different type of choice than a general election in which the judge is seated in a general election in the first instance. And the plaintiffs do not challenge anything about the conduct of the retention election. They do not allege that any member of the Lake County electorate is excluded unfairly from the retention election. They just challenge that it takes place at all. And that is not something that the language in Section 2 would apply to. The language in Section 2, specifically with the totality of the circumstances consideration, what the court needs to examine there is the political processes leading to nomination or election, whether they're equally open to all members of the electorate. None of this language governs appointment to public office or anything to do with that. I want to, before I get too much further... I'm sorry, I just want to make sure I understand. Is your, because I didn't see this in your briefs, is your argument that 2B doesn't apply at all to the retention voting in the counties at issue? The state does not argue that 2B does not apply to the conduct of the retention elections in Lake County. So you agree that 2B would apply? As far as... Do you agree... There was a double negative there, so I want to make sure I understand you. Do you agree that 2B would apply to the retention voting system in the first place? So the state here would probably follow Bradley insofar as Bradley says that a retention election is a voter choice in the same way that a general election is. So Section 2 applies to digital retention elections. But I would note that Bradley was dealing with a statute that was later mooted, so its applicability would be limited. But the key point that the state has here is that the retention election is not the true crux of this dispute. The crux of this dispute is the appointment process. I guess I'm not sure whether you answered Judge Sainiff's question. Bradley aside, what is... Assuming Bradley doesn't apply, OK, what is the state's position as to whether or not Section 2 applies to retention elections versus open elections? Does Section 2 apply? So in the sense that the voters are making a choice and Section 2 wants the court to look at whether that choice is equally open to everyone in the electorate, then yes, the state doesn't see that the conduct of the retention election would be any way outside the scope of Section 2. So if the electorate is the entire state, do you agree there's a problem here? One of the things... When we're looking at a statewide election, you have to think about the electorate of the entire state because everyone in the state is voting in it. So that's different when you have here, you have a subset, a local electorate defined in statute as coterminous with the Lake County Judicial Circuit. That's a different matter. So turning to an argument you made with regard to Lake County, that in 1971 there was a study that was done, right, that led to the legislature enacting the retention, the appointment retention of the Missouri plan in 1973 for Lake County. I believe the study is dated October of 1972. Yes, the 1973 session was when the question was put to the legislature. And in, I believe, 1965, there was a statewide study done, right? That's correct. And one of the findings there was that the bar was very disenchanted with the partisan nature of elected judges, and statewide the recommendation was that the whole state go to the Missouri plan, right? In 1965. And so in 72, the legislature decides to focus on Lake County and do a subset study, which came to the same conclusion. Not surprisingly, I would say. Do we know, or is there anything in the record as to why the legislature at that time focused on Lake County versus any of the other larger counties? Your Honor, we're not aware of anything in particular that would have motivated this. We do know from the findings in the report that lawyers, judges, and citizens in Lake County were pervasively dissatisfied with the function of the Lake County Superior Court. Right. And as I said, that echoes the same findings for the statewide study. And so I'm wondering if there's anything in the record as to why Lake County in particular in 1972. The legislative record is not specific here. What we do know about Lake County at that time, it was one of the highest population counties in the state. And did the legislator consider doing similar studies in other high populated counties? Similar studies were performed. And what happened to those counties? So around, and my years are going to be a bit spotty here, but in the 70s generally of Marion County, which is Indianapolis, Lake County, Allen County, which is Fort Wayne, Vanderbilt County, and St. Joseph County, which is South Bend area. And there's sort of a general sense that in a lot of these areas with higher court caseloads, the administration of judicial elections be more cumbersome and difficult. In just a general sense that these areas were having unique challenges that were not present in other parts. And then at some point, Allen County amended, the legislator amended the way things were done in Allen County and changed the retention vote to an open vote after a judge is appointed through the JNC process, right? So the very specific factual point there, and I know we discussed this with counsel for the appellants as well. So judicial candidates in Allen County are elected in the first instance. So it's not like the situation in Lake County where they're seated with the assistance of the JNC and then after they're in the term for a while, they are open for an open election. Any person, so the system in Allen County is very similar to the way it is in the other counties in which the judges are elected in general elections regularly. The difference is that in other counties that aren't Allen County, and there may be another one, but that's not discussed. The difference is that instead of the governor when the governor makes midterm appointments for judges, the governor does it unassisted in other locations. And in Allen County, because you have a larger court, and again, the legislative rationale is really not at issue here, so I won't go into too much detail, but the JNC is assisting the governor in finding qualified nominees. I think we need to take the entire gubernatorial appointment to fill midterm vacancies out of this analysis because it's injecting a great deal of confusion analytically. Right, but specifically with respect to what the appellant was saying, it's not that you have appointment plus general election in Allen County. You only have general election. The appointment process for midterm is different. What happens outside of the counties at issue here? A judge is elected. What happens when her term is up? Does she go back to a general election? Is there any retention voting anywhere? So she goes back to a general election and anybody can run against her. Unless you're talking about Marion County and St. Joseph County. Yeah, take those counties out. Let's take Hendricks County, which is where I'm from. The voters there elect the Superior Court judges just routinely. You have general open elections where anyone can declare candidacy for them. This is the standard procedure for every other county. So, you know, over the years, I don't know the legislative history. I'm hoping that you do. Over the years, the populations of various counties have changed. Right. And so now we have Hamilton County, Allen County and even Elkhart County, which is basically more or close to the population in St. Joe's. Since 73, have there been any legislative consideration on going to the Missouri plan in those highly populated counties? We're not certain of anything specific here. We do know that this is a conversation that is had frequently in Indiana, and we know that one of the differences between the counties that you mentioned that's important to note here is the number of judges. So in Hamilton County, there's only seven Superior Court judges. In Elkhart County, there's only six. In Lake County, there are 16. So there's a difference between there. How many? In Lake County, there are 16 Superior Court judges. Second only to Marion, there's only two counties in the state where there are more than 10 Superior Court judges in a given county. In most, there are only one or two. So that's a difference between these counties that is relevant in terms of how how legislature might consider judicial selection. We have no further questions from the court. And we ask you to thank you. Thank you. Mr. Dick. I'd like to there was a question about the totality of the circumstances and then Judge Lee had an example. And I think there's a an example that perfectly encapsulates why this system violates the VRA. There is nothing in Indiana law that mandates the judicial circuits be the same as counties and they are not always so. Indiana could make judicial circuits one judge seats and in doing so could very precisely target areas where black voters live in Indiana. You could do a system where 98% of black voters in Indiana would only have a retention vote for their judges and 98% of white voters would have a vote in an election. Under the state's theory VRA has nothing to say. That's that's perfectly allowable and a voter in one of these micro districts couldn't say but look at the totality of the circumstances. This is precisely targeted areas where there are high minority voters. So I think it's it's absolutely relevant in this case that this is only been implemented in the three high highest diversity jurisdictions and under a totality of the circumstances. I think that is very relevant to whether this scheme violates the VRA especially in light of the state designating evidence that the reason this is in place in Lake County is because it's highly diverse and I think that under the totality of the circumstances is highly relevant. I think it's also highly relevant under an intentional discrimination theory and I think that this system and I'm out of town under the totality of the circumstances absolutely violates the Voting Rights Act. What remedy are you seeking? We would seek under it's Harper. We've cited the case that what would need to happen is to be remanded back to the state to be given an opportunity to rectify it and there are almost limitless ways it could do so. It could do retention votes in all judicial circuits. It could do open election. It could do go to entire system where everybody is appointed. It could do voting in maybe counties over 10,000 voters that have a certain system. Any way that there's almost limitless ways it corrected and then if it didn't correct it then the district court could choose from one of the existing modes of government in Indiana which we've designated Lake County for the majority of its existence had elections. There's Allen County as another example. There are many ways that it could be rectified under the existing form of Indiana government if the state didn't rectify it. You're seeking essentially a wholesale restructuring of the state's method of selecting superior court judges on order of the federal court under Section 2? No, Your Honor. I think that the... Well, that's what you just described. That's exactly what you just described. I'm saying those are things the state could do and the state could also do a very precise just say, okay, just like in Allen County it's appointment, J&C, open election. But it's not appointment in Allen County. It's judicial elections. Take the entire red herring of the governor's authority to fill midterm vacancies out of this. That's a head fake that is all throughout your brief. Take that off the table. That's not what we're talking about. We're talking about judicial selection, quad judicial selection. Judges in Allen County are elected. Superior court judges are elected. Allen County is just like the other counties. There's a difference in how the governor fills midterm vacancies. That's not what you're challenging, the governor's midterm vacancy appointment authority. You're challenging the Missouri plan appointment plus retention election components. And I don't think they can be decoupled because you're not seeking a remedy of appointment only in Lake County. You're seeking an order from the federal court to the state legislature to rewrite the entire system of selecting superior court judges throughout the state. Your Honor, Lake County for the majority of its existence, and we've designated this, had an election for the superior court judge. So the court could say, you're returned to what you've had for the majority of your existence. And that would not require rewriting anything throughout the whole state. The rest of the state could remain exactly as it is today and it would just be returning Lake County to what it's been for the majority of its existence. That would have the effect of invalidating the Missouri plan for the other two counties as well. So it would be forbidding the state to use the Missouri plan in any county. It either has to do it in all counties or no county. Well, I would say, Your Honor, it needs to do it in counties or circuits such that you don't end up with a giant racial disparity. So if it did it in every county, all the donut counties around Marion County, every high population county such that there was not huge disparities, and the court in Brnovich had talked about, you know, small disparities wouldn't violate it. So I think they absolutely could do a Missouri plan and it wouldn't necessarily have to be across the state. It just can't be in a way when you end up with these shocking disparities by only doing it in the three highest minorities. Mr. Dick, I take it that I don't know, I'll ask you. Would the remedy of changing the retention, maintaining the governor's appointment authority by changing the retention elections in Lake Marion and St. Joe's County to open elections, would that address your complaint? Absolutely. Yes. Or keeping it retention. I mean, keeping it appointment by the governor. Correct. Yes. So there would be no opportunity for the voters to vote at all. Oh, then I misunderstood that question. That's a different question. Oh, okay. I'm sorry. The question is, would your clients be happy with being disenfranchised entirely? Is that the remedy they want here? I think the answer to that is pretty obvious. I believe that the only way you can do it consistent with the Voting Rights Act is that you would need to, as Chisholm said, the judiciary, if they did it across the board, then yes. And we don't challenge that with appellate vote courts or the court. I mean, if they did it in a way that didn't result in huge racial disparities, then that may well not. If you did it in every county with over 10,000 people, it may not violate the Voting Rights Act to do it. There could be ways, but I think with Judge Lee, that's more what we think would be the proper solution. But there are a lot of ways they could do it. Thank you, Your Honors. Our thanks to all counsel. The case is taken under advisement.